UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OMAR OBREGON ANTE,<br>Petitioner,<br>v.<br>TODD LYONS et al.,<br>Respondents. | CASE NO. 2:26-cv-02464-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS |

This matter comes before the Court on an amended Petition for Writ of Habeas Corpus filed by petitioner Omar Obregon Ante. Dkt. No. 9. For the reasons stated below, the Court grants in part and denies in part the petition.[1]

## I. BACKGROUND

Obregon Ante is a native and citizen of Columbia who is currently in the custody of the United States Department of Homeland Security ("DHS"), United States Immigration and Customs Enforcement ("ICE"). Dkt. No. 7 at 1. With his wife and one-year-old daughter, Obregon Ante entered the United States in Texas on July 10, 2023 to seek asylum "because dangerous armed groups [in Columbia] were making threats" against him. Dkt. No. 10 at 2. That day, United

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized[.]").

States Border Patrol served Obregon Ante with a Notice to Appear ("NTA") charging him as inadmissible under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1182(a)(6)(C)(i)), as a noncitizen present in the United States without being admitted or paroled. Dkt. No. 7 at 2; Dkt. No. 6-1. On July 11, 2023, Border Patrol released him on an Order of Release on Recognizance ("OREC"). Dkt. No. 7 at 2; Dkt. No. 6-2. The OREC stated that his release was contingent on his successful participation in the Alternatives to Detention ("ATD") program. Dkt. No. 6-2 at 2. Obregon Ante subsequently moved to Washington. Dkt. No. 10 at 2.

On April 22, 2026, Obregon Ante reported to ICE Office of Enforcement and Removal Operations ("ERO") for a "routine case review" at the ERO office in Tukwila, Washington. Dkt. No. 7 at 2. "During that case review, ERO discovered that Petitioner had failed to report for check-ins on eleven separate occasions," including "failed" home visits and missed biometric check-ins. *Id.* For his part, Obregon Ante avers that he always did his "very best to show up to [his] ICE check ins on time," though he did show up "a few minutes late" sometimes (resulting in a missed appointment), and that although he occasionally had trouble uploading pictures to the ATD application, he "always tried to speak with someone on the phone" when he had trouble. Dkt. No. 10 at 2. "ERO management approved a custody redetermination" based on Obregon Ante's "failure to report," which violated his OREC terms and conditions. Dkt. No. 6-3 at 3; Dkt. No. 7 at 2. ERO officers arrested him, put him into "an unmarked detention vehicle," and transported him first to an "ERO hold room" and then to the Northwest ICE Processing Center ("NWIPC"). Dkt. No. 6-3 at 3; *see also* Dkt. No. 6-4 (arrest warrant); Dkt. No. 6-5 (memorandum canceling OREC). Obregon Ante avers that, during his routine check-in, ERO told him they were arresting him because he "missed [his] check ins," but he "was not provided with any chance to speak with a judge before [he] was arrested and [he] was not provided with any prior notice that [he] would be arrested." Dkt. No. 10 at 3.

Obregon Ante applied for asylum, which was denied by an immigration judge on July 27, 2026. *Id.* at 2, 4; Dkt. No. 7 at 2. He has appealed that denial to the Board of Immigration Appeals ("BIA"), where it remains pending. Dkt. No. 15 at 4.

On July 13, 2026, Obregon Ante filed a pro se petition for a writ of habeas corpus. Dkt. No. 1. He subsequently obtained counsel and filed an amended petition on August 4, 2026 pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). Dkt. No. 9. Respondents[2] filed a return to the amended petition on August 17, 2026, Dkt. No. 13, and Obregon Ante filed a traverse on August 20, 2026, Dkt. No. 14.

## II. DISCUSSION

Obregon Ante contends that the government violated his due process rights by re-detaining him "without written notice and a pre-deprivation hearing before a neutral decisionmaker to determine whether re-detention is warranted based on danger or flight risk." Dkt. No. 9 at 15. He requests an order requiring his immediate release and "immediately and permanently enjoining" Respondents from re-detaining him "absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that he is a flight risk or danger to the community and that no alternative to detention would mitigate those risks[.]" *Id.* at 15–16. He also requests "explicit leave" for his counsel to seek attorney's fees and costs under the Equal Access to Justice Act and "other relief as may be just and reasonable." *Id.* at 16.

Respondents contend that Obregon Ante is mandatorily detained, and that, even if his detention is not mandatory, he was lawfully re-detained due to failure to comply with his OREC

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary." (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

conditions. Dkt. No. 13 at 2, 5–6. Respondents also aver that Obregon Ante has received sufficient due process based on his recent merits hearing because any "risk of erroneous deprivation of liberty has been addressed by the very proceeding that determines whether he may remain in the United States at all," *id.* at 9, and that, at most, a post-deprivation hearing is sufficient, *id.* at 10. Respondents also argue that Obregon Ante is not entitled to a preliminary injunction. *Id.* at 10–12.

**A. Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all

'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Petitioner Has Established a Due Process Violation**

Despite recent controlling Ninth Circuit precedent, *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026), the parties dispute which statute applies to Obregon Ante. *See* Dkt. No. 9 at 11; Dkt. No. 13 at 2–3; Dkt. No. 14 at 1–2. The applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022); *see also id.* at 1203 (explaining that because "§ 1226(a) provides substantially different procedures than the provisions [the court had] examined in the past," the court could not accept petitioner's "suggestion that [the court's decisions regarding other detention provisions] mandate[d] the same procedural relief in this case"). Accordingly, the Court first addresses the applicable statutory process and then addresses due process.

1. Process Required by the Statute

a. *8 U.S.C. § 1226(a) is the Applicable Statutory Authority*

Obregon Ante contends that that 8 U.S.C. § 1226(a) governs his detention, and he relies on other cases from this district so holding. Dkt. No. 14 at 1–2; *see* Dkt. No. 9 at 11. Respondents aver that Obregon Ante is "an applicant for admission subject to mandatory detention under 8 U.S.C. § 1225(b)(2)." Dkt. No. 13 at 5; *but see id.* at 2 (acknowledging that contrary Ninth Circuit precedent "requires the conclusion that detention is governed by 8 U.S.C. § 1226(a)").

8 U.S.C. § 1225 applies to "applicants for admission" to the United States. An "applicant for admission" is a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission face mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit," § 1182(d)(5)(A). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). "That express exception to detention implies that there are no *other* circumstances under which aliens detained under §1225(b) may be released." *Id.* at 300.

As the Ninth Circuit recently held, "[noncitizens] present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Rodriguez Vazquez*, 2026 WL 2196424, at *3; *see also Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026). "The implication of the government's position is that Congress in 1996 made a major change to the immigration laws by subjecting millions of unadmitted [noncitizens] present in the United States to mandatory detention, but that this change then went unnoticed and unheeded, with the Executive Branch for the next three decades violating Congress's assertedly unambiguous mandatory detention directive by treating these [noncitizens] as subject to release on bond." *Rodriguez Vazquez*, 2026 WL 2196424, at *3. But "the text, context, and structure of the INA, considered as a whole, did not direct such a significant, yet overlooked, change in the law." *Id.* Moreover, under Respondents' interpretation, "Congress's recent handiwork in the Laken Riley Act," which carved out an additional category of noncitizens from section 1226(a)'s discretionary detention scheme who now fall under section 1226(c)'s mandatory detention authority, "would be rendered superfluous, because those aliens subject to § 1226(c)(1)(E) would already be subject to mandatory detention under § 1225(b)(2)(A), as inadmissible aliens present in the United States." *Id.* at *20.

Consistent with the Ninth Circuit's interpretation of the governing statutory scheme, the government has treated Obregon Ante as subject to discretionary detention under 8 U.S.C. § 1226 from the time he was released on an OREC until his arrest. Dkt. No. 6-2 at 2 (OREC for Obregon Ante issued "[i]n accordance with section 236 of the Immigration and Nationality Act," which is codified at 8 U.S.C. § 1226); *see also* Office of Homeland Security Statistics, *Glossary: Release on Recognizance*, https://ohss.dhs.gov/glossary (last visited August 25, 2026) (defining "Release on Recognizance" to mean "release from ICE detention subject to reasonable conditions of [a noncitizen] in removal proceedings after having been issued a Notice to Appear (NTA) or [a noncitizen] with an appeal pending with the Board of Immigration Appeals (BIA)" "*[p]ursuant to section 236(a) of the INA*" (emphasis added)). Furthermore, the Notice of Custody determination dated April 22, 2026 ordered Obregon Ante detained pursuant "to the authority contained in section 236" of the INA, codified at 8 U.S.C. § 1226, Dkt. No. 6-4 at 3, and the I-213 form from the same date listed him as a noncitizen "present without admission or parole"—not "an arriving alien," Dkt. No. 6-3 at 3. Nothing in the record prior to his arrest suggests that his release was pursuant to Section 1225(b). These facts demonstrate that his detention is governed by 8 U.S.C. § 1226, not 8 U.S.C. § 1225.

Obregon Ante argues that he "has been denied all of the process due" under this statute. Dkt. No. 14 at 5. Because "the applicable statutory process shapes [the petitioner's] procedural due-process rights," *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020), the Court addresses the process required here.

b. *Procedures Required under 8 U.S.C. § 1226(a) and Implementing Regulations*

Section 1226 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also*

*Jennings*, 583 U.S. at 288 ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal."). As the Supreme Court instructed in *Jennings*, "[s]ection 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen]" pending a removal decision, and "'may release' a[] [noncitizen] detained under § 1226(a) 'on bond . . . or conditional parole.'" 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

"Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). In the first instance, the arresting officer makes the initial determination whether to release a noncitizen detained under § 1226(a) on bond or parole. 8 C.F.R. § 236.1(c)(8). Following this initial custody determination, the noncitizen may request a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19.

Under DHS regulations, a noncitizen detained under Section 1226(a) bears the burden of showing, by a preponderance of the evidence, that he does not pose a danger to the community and is not a flight risk. 8 C.F.R. § 1236.1(c)(8); *see also Rodriguez Diaz*, 53 F.4th at 1197; *Matter of Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006); *Matter of Barreiros*, 10 I&N Dec. 536, 537 (B.I.A. 1964). In assessing whether to release a noncitizen on bond, the immigration judge considers, among other factors, "the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country." *Rodriguez Diaz*, 53 F.4th at 1197 (citing *Guerra*, 24 I&N Dec. at 40); *see also Matter of E-Y-F-G*, 29 I&N Dec. 103, 104 (B.I.A. 2025). The detainee may be represented by counsel and can submit evidence in support of his claims. *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016). He can also appeal an adverse decision to the BIA. 8 C.F.R.

§ 236.1(d)(3). The detainee may also request an additional bond hearing based on a material change in circumstances. 8 C.F.R. § 1003.19(e).

If bond is granted, the noncitizen's bond can be revoked at any time, even if the noncitizen was previously released; however, if an immigration judge has determined that the noncitizen should be released, DHS may not re-arrest that noncitizen absent a change in circumstance. *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018) (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)). "DHS has incorporated this holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017); *see also Y.M.M. v. Wamsley*, No. 2:25-cv-02075, Dkt. No. 10 at 2 (W.D. Wash. Nov. 4, 2025) (Respondents' brief stating that it has "long been recognized by the Board of Immigration Appeals [that] a senior immigration official's exercise of discretion to revoke an individual's release under 8 C.F.R. § 236.1(c)(9) is limited to situations in which there has been a 'change in circumstance' since the non-citizen was initially released."). Only specific officials may revoke a noncitizen's OREC under 8 C.F.R. § 236.1(c)(9).

2. <u>Due Process Requirements</u>

As discussed above, Obregon Ante contends that his Fifth Amendment rights were violated by his re-detention "without written notice and a pre-deprivation hearing before a neutral decisionmaker to determine whether re-detention is warranted based on danger or flight risk." Dkt. No. 9 at 15. Respondents do not contend that Obregon Ante received a pre-deprivation hearing or notice, *see generally* Dkt. No. 13, but contend that "the factual basis for the revocation [of Obregon Ante's OREC] is clear, extensive, and undisputed," that due process is flexible and "calls for such procedural protections as the particular situation demands," and that the merits hearing Obregon

Ante received "addresse[d] the core concerns" surrounding the risk of erroneous deprivation of liberty, *id.* at 7–9 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews*, 424 U.S. at 332. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In analyzing a procedural due process claim, the court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge*. *Id.* at 1179–80.

a. *Constitutionally Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties" in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also*

*Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

Obregon Ante has been living in the United States since July 2023, almost entirely on an OREC before he was re-detained. Dkt. No. 10 at 2; Dkt. No. 7 at 2. He applied for and obtained a work permit and worked in construction. Dkt. No. 10 at 2. He saved up enough money to rent an apartment for his family in Shoreline, Washington, made friends, and formed a community at his church. *Id.* at 2–3. He is entitled to at least those protections described above with respect to his protected liberty interest in remaining out of immigration custody.

b. *Procedural Protections*

To determine what procedures are constitutionally sufficient to protect a petitioner's liberty interest, courts analyze the three *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context," 53 F.4th at 1206–07, and district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

With respect to the first factor, as discussed above, Obregon Ante has an interest in remaining out of immigration detention. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Despite his liberty interest being "indeterminate" under an OREC, that interest "includes many of

the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the [noncitizen] and often on others." *Id.* Relatedly, Obregon Ante has an interest in the government adhering to its own procedures requiring (1) a revocation made by an appropriate official and (2) a bond hearing upon request. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); 8 C.F.R. § 236.1(c)(9). This factor favors Obregon Ante.

Turning to the second factor, Respondents purported to detain Obregon Ante under 8 U.S.C. § 1225(b), stripping him of his right to a bond hearing. *See* Dkt. No. 13 at 2. Furthermore, Respondents have not shown that Obregon Ante's OREC was revoked by an appropriate official.[3] The risk of erroneous deprivation is significant where the government fails to follow its own procedures, thus depriving the noncitizen of process due. *See Lopez v. Noem*, No. CV-GLR-25-3662, 2025 WL 3496195, at *5 (D. Md. Dec. 5, 2025) (finding that there was a high risk of erroneous deprivation because "the Government's failure to comply with its own agency regulations necessarily deprive[d] [petitioner] of the procedural process due her, rendering her current detention unlawful"); *J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *9 (E.D. Cal. Nov. 14, 2025) (finding that the risk of erroneous deprivation was high where ICE "did not provide petitioner the process required by its own regulations").

The additional procedures afforded under Section 1226(a) would substantially mitigate the risk of erroneous deprivation of Obregon Ante's liberty, because those procedures allow detention only where the petitioner presents a flight risk or danger to the community. An adverse decision

[3] Respondents provide an OREC cancellation form signed by an Assistant Field Office Director, Dkt. No. 6-5 at 2. However, Respondents do not explain how the Assistant Field Office Director was authorized to revoke the OREC; they note that the "implementing regulation confirms that release may be revoked at any time in the discretion of designated officers," Dkt. No. 13 at 3, but the regulation provides that only the "district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign)" are authorized to revoke a noncitizen's OREC. 8 C.F.R. § 236.1(c)(9); *see also* 8 C.F.R. § 1236.1(c)(9) (listing district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign)"). Respondents do not explain how an Assistant Field Office Director is one of these designated officers.

by an immigration judge in a bond hearing can further be appealed, and Obregon Ante could seek additional custody redeterminations based on changed circumstances, such that the outcome of a bond hearing would be subject to "numerous levels of review, each offering [the petitioner] the opportunity to be heard by a neutral decisionmaker." *Rodriguez Diaz*, 53 F.4th at 1210 (finding the bond hearing procedures available through the implementing regulations of Section 1226(a) would render "the risk of erroneous deprivation . . . relatively small") (citation omitted). While Respondents claim that Obregon Ante was re-detained because he violated the terms of his OREC, Dkt. No. 13 at 6, that does not excuse the government's compliance with the applicable regulations. This factor weighs in favor of Obregon Ante.

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that enforcing immigration laws, including "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. However, those interests are not impermissibly burdened by requiring the government to follow its own procedures regarding OREC revocations and bond hearings. Therefore, the Court finds that this factor too weighs in favor of Obregon Ante.

Under *Mathews*, the Court finds that the United States failed to provide Obregon Ante with the procedures due to him under the Due Process Clause, and accordingly, his detention is unlawful.

**C. Tailored Injunctive Relief is Appropriate**

In addition to immediate release, Obregon Ante requests an order "permanently enjoining his re-detention absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that he is a flight risk or danger to the community and that no alternative to detention would mitigate those risks[.]" Dkt. No. 9 at 15–16. He clarifies that he

is "not requesting a blanket prohibition of re-detention under all circumstances," but rather seeking an order preventing Respondents from re-detaining him "in a same or similar manner as they have" in the instant case, in which he was "detained without any due process[.]" *Id.* at 12. He requests that the "Court take judicial notice" of the significant number of cases in this district in which courts have found that "re-detention requires procedural safeguards pursuant to the Due Process clause." *Id.* at 14. He argues that Respondents have "made it clear" that despite rulings in many cases that "this exact type of re-detention has been determined to violate the Due Process clause of the Fifth Amendment, they do not intend on changing their re-detention practices." *Id.* at 12. According to Obregon Ante, the "fact that ICE has not changed its practices to comport with the Court's rulings," coupled with his rights being "so easily violated in the first instance," establish a "cognizable danger that [he] could be arbitrarily re-detained again"—thereby suffering irreparable injury—unless the Court issues a permanent injunction. *Id.* at 14; Dkt. No. 14 at 11.

Respondents assert that the requested permanent injunction is "unwarranted" because it would "exceed what due process requires" and "improperly constrain the government's statutory authority under 8 U.S.C. § 1226(a) and, once the removal order becomes final, under 8 U.S.C. § 1231." Dkt. No. 13 at 11–12. Respondents contend that, should the Court determine that additional process is required, the "appropriate remedy is a prompt bond hearing before an immigration judge," not a permanent injunction. *Id.* at 12.

The federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman*, 977 F.3d at 941. Specifically, where, as here, habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Id.* at 941–42. A plaintiff seeking a

permanent injunction must demonstrate (1) that she has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)). Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953)).

Obregon Ante has shown that injunctive relief is appropriate. He has been detained for over four months after being taken into detention in a manner that violated his due process rights, and there is a cognizable danger that a violation of this same nature will recur. As Obregon Ante emphasizes, Dkt. No. 9 at 14, Respondents have been on notice in this District for at least ten months that re-detaining individuals like him who were arrested while already present in the United States without providing a bond hearing violates the Fifth Amendment's Due Process clause. *Rodriguez Vazquez*, 802 F. Supp. 3d at 1322–36. Since that time, Respondents have continued to re-detain such individuals in this District in the same constitutionally deficient manner on innumerable occasions, despite numerous court orders repeatedly finding that these actions violate due process. Indeed, Respondents acknowledge that courts in this District have found noncitizens "released on OREC are re-detained pursuant to Section 1226(a)," and further

acknowledge binding Ninth Circuit precedent that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of 8 U.S.C. § 1226, not 8 U.S.C. § 1225(b)(2)(A)," but nevertheless maintain that Obregon Ante is detained pursuant to Section 1225(b), which subjects him to mandatory detention. Dkt. No. 13 at 3, 6 (citing *Rodriguez Vazquez*, 2026 WL 2196424, at *3). There is a specific risk that Respondents will again re-detain Obregon Ante in the same manner: as they state in their return, they believe that the alleged violations of his OREC justify his re-detention without a bond hearing. *Id.* at 6, 10. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "[U]nlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." *Id.* at 999.

Finally, the Court finds that both the balance of equities and the public interest favor the entry of a permanent injunction. These two factors merge when the federal government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Galvez v. Jaddou*, 52 F.4th 821, 831 (9th Cir. 2022). The government's interests in enforcing immigration laws and protecting the public are in fact served by the determination by an immigration judge as to whether a noncitizen is dangerous or at risk of fleeing removal proceedings. *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1161 (D. Nev. 2025). And it "is always in the public interest to prevent the violation of a party's constitutional rights." *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020).

Although the Court finds injunctive relief to be appropriate, the scope of Obregon Ante's requested injunction is overbroad. First, his request that Respondents be required to meet a clear and convincing evidence standard at any bond hearing, Dkt. No. 9 at 16, is not supported by authority. Obregon Ante's request for the same injunctive relief no matter what statute he is

detained under is likewise overbroad. Accordingly, Court will order tailored injunctive relief requiring that any bond hearing comport with Section 1226(a) for so long as Obregon Ante is subject to that statute. *Galvez*, 52 F.4th at 834 ("Although the 'district court has considerable discretion in fashioning suitable relief and defining the terms of an injunction,' the injunction 'must be tailored to remedy the specific harm alleged.'" (quoting *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991)).

## III. CONCLUSION

For the foregoing reasons, Obregon Ante's amended petition for a writ of habeas corpus, Dkt. No. 9, is GRANTED IN PART and DENIED IN PART, and the Court ORDERS as follows:

1. Respondents shall release Obregon Ante from custody within 24 hours on the terms of his most recent OREC or other terms consistent with Section 1226(a) and shall return to Obregon Ante any personal property not required to be retained by Respondents by law;
2. The parties shall file a Joint Status Report by August 27, 2026, confirming that Obregon Ante has been released;
3. Absent extenuating circumstances, and so long as Obregon Ante continues to be subject to Section 1226(a), as the Court has construed it in this Order, Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them shall not re-detain Obregon Ante without a pre-detention hearing as required under Section 1226(a) and its implementing regulations;
4. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr.* Ctr., No. 24-2990, 2026 WL 263483, at *10 (3d Cir. Feb. 2, 2026) (the Equal

Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *Vacchio v. Ashcroft*, 404 F.3d 663, 668 (2d Cir. 2005) (same); *Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009) (granting fee award to immigration detainee who prevailed on habeas petition); *Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context); *but see Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023) (holding that EAJA does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions); *Obando-Segura v. Garland*, 999 F.3d 190, 197 (4th Cir. 2021) (same). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 26th day of August, 2026.

Lauren King
United States District Judge